# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY BROWN, et al., | : | |
| Petitioners, | : | CIVIL ACTION |
| | : | No. 20-1914 |
| v. | : | |
| SEAN MARLER, | : | |
| Respondent. | : | |

**April 24, 2020**                                                                                           **Anita B. Brody, J.**

## MEMORANDUM

On April 15, 2020, three detainees in the Philadelphia Federal Detention Center ("FDC")—Timothy Brown, Myles Hannigan, and Anthony Hall ("Petitioners")—filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging conditions of confinement at the FDC in light of the current COVID-19 outbreak. They seek to represent a class of all current and future FDC detainees, including pretrial detainees, convicted detainees awaiting sentence, and sentenced detainees. They argue that their confinement in the FDC violates the Fifth and Eighth Amendments. They ask the Court to (1) release all medically vulnerable detainees to home confinement; (2) order the FDC to take steps that will mitigate the COVID-related risks for those detainees who remain confined; and (3) appoint a Special Master to chair a Coronavirus Release Committee, which would make recommendations on release decisions and mitigation of prison conditions. Respondent Sean Marler—the FDC warden—has filed a motion to dismiss the petition under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). He argues that the Court lacks subject-matter jurisdiction under § 2241 and that the petition is meritless. Petitioners disagree.

Before the Court can reach the parties' merit-based arguments, it must determine the threshold question of whether it has subject-matter jurisdiction. District courts have the authority

to order limited jurisdictional discovery when facts related to subject matter jurisdiction are in dispute. Petitioners seek discovery as to the conditions of the FDC, including an on-site inspection from a neutral investigator. Respondent objects to this inspection request, arguing that the Court lacks jurisdiction under § 2241, and thus lacks the power to order an inspection or any other discovery. More importantly, Respondent also argues that any on-site inspection could have dangerous consequences by disrupting the careful measures the BOP has put in place to prevent a COVID-19 outbreak from occurring at the FDC.

Because the Court has not yet determined whether it has jurisdiction, it certainly is premature to consider an on-site inspection.[1] *Limited* jurisdictional discovery as to the FDC's conditions is appropriate at this stage, however, to evaluate whether "extraordinary circumstances" justify exercising § 2241 jurisdiction over the pretrial detainees at the FDC. *See Reese v. Warden Philadelphia FDC*, 904 F.3d 244, 246 n.2 (3d Cir. 2018) (recognizing that "exceptional circumstances" may—in rare situations—justify consideration of a federal detainee's pretrial § 2241 petition).

**I.     Discussion**

A large portion of the detainees at the Federal Detention Center are awaiting trial. Resp't. Mot. to Dismiss, at 24 n.12 (ECF No. 12-2). As a general rule, a "federal detainee's request for release pending trial can only be considered under the Bail Reform Act and not under a § 2241 petition for habeas relief." *Reese*, 904 F.3d at 245 (3d Cir. 2018). Respondent cites

---

[1] The Court appreciates the Respondent's willingness to provide prompt information as to the conditions of the FDC, and his recognition that "both this Court and the public deserve to know . . . that federal prison officials are taking all steps in their power to fulfill their duty both to protect the public and to preserve the health and safety of the inmates in their charge." Resp't. Mot. to Dismiss, at 1 (ECF No. 12-2). It also takes seriously Respondent's concern that making exceptions to the FDC's no-visitor policy could affect the prison's ability to execute its strategy for containing the virus.

*Reese* to argue that this Court lacks § 2241 jurisdiction over the FDC's pretrial detainees.[2]

However, "[t]he Supreme Court has suggested that pretrial habeas relief might be available to a federal defendant in 'exceptional circumstances.'" *Id.* at 246 n.2 (citations omitted)). As the Third Circuit has explained:

> Neither the Supreme Court nor this Court has delineated the circumstances that might qualify as "exceptional" in this context. . . . We have ruled that a <u>state</u> prisoner may pursue a pretrial § 2241 petition without exhausting state remedies in "extraordinary circumstances," which might exist when there is a showing of "delay, harassment, bad faith, or other intentional activity" on the part of the state. *Moore v. DeYoung*, 515 F.2d 437, 447 n.12 (3d Cir. 1975). We need not delimit the precise bounds of any exception here . . . .

*Reese*, 904 F.3d at 246 n.2.[3]

---

[2] Respondent assumes that under *Reese*'s rule, courts *lack jurisdiction* over pretrial § 2241 habeas petitions. That is likely mistaken. The same general rule—that absent exceptional circumstances, courts should not entertain pretrial § 2241 habeas petitions—exists in the state-prisoner context. Third Circuit and Supreme Court cases discussing the rule in that context make clear that courts *do* possess pretrial habeas jurisdiction. They also make clear that the rule stems *not* from a lack of jurisdiction but rather from equitable considerations that counsel against *exercising* that jurisdiction. *See, e.g., Ex parte Royall*, 117 U.S. 241, 247, 251 (1886) (recognizing that a federal court "ha[d], by the express words of the [habeas corpus statute,] jurisdiction" over a state prisoner's pretrial habeas petition, but concluding that the court "is not bound in every case to exercise such a power"); *Fay v. Noia*, 372 U.S. 391, 418- (1963) (noting that the *Royall* decision "plainly stemmed from considerations of comity rather than power" and led to a line of cases "fashion[ing] a doctrine of abstention," that do not "defin[e] power but [instead] . . . relate[] to the appropriate exercise of power" (citations and internal quotation marks omitted)); *Moore v. DeYoung*, 515 F.2d 437, 442-43 (3d Cir. 1975) (discussing *Royall* and *Noia* and concluding that "federal courts *have 'pre-trial' habeas corpus jurisdiction*," but also that this jurisdiction "should not be *exercised* at the pre-trial stage unless extraordinary circumstances are present." (emphasis added)). Section 2241(c)(3)'s words—and Congress's textual grant of jurisdiction—are the same when a federal prisoner uses them as they are when a state prisoner uses them. *Cf. Medina v. Choate*, 875 F.3d 1025, 1027 (10th Cir. 2017) ("[I]t is not surprising that a respect for federal-court procedure—similar to the respect for state-court procedures expressed in *Ex parte Royall*—has led to decisions rejecting the use of habeas corpus by federal prisoners awaiting federal trial." (citations omitted)). But the Court need not fully resolve this question here. If *Reese*'s rule is not based on a lack of jurisdiction, the Court may order limited discovery to inform the exercise of power that it possesses. If the rule is jurisdictional, the Court may order limited discovery to determine whether jurisdiction exists in the first place.

[3] For the relevant language of the Supreme Court cases *Reese* references, *see Jones v. Perkins*, 245 U.S. 390, 391 (1918) ("It is well settled that *in the absence of exceptional circumstances* in criminal cases the regular judicial procedure should be followed and habeas corpus should not be granted in advance of at trial." (emphasis added)); *Johnson v. Hoy*, 227 U.S. 245, 247 (1913) ("The writ of habeas corpus is . . . not available to a defendant before trial, *except in rare and exceptional cases* . . . ." (emphasis added)); *see also Riggins v. United States*, 199 U.S. 547, 551 (1905) (vacating order granting pretrial habeas relief to federal detainees because there was "nothing in this record to disclose that there were *any special circumstances which justified a departure* from the regular course of judicial procedure" (emphasis added)).

To be sure, this exception is extremely rare. *See id.* ("If a federal prisoner is ever entitled to relief under § 2241 based on something that happened before trial, the circumstances are so rare that they have apparently not yet arisen." (quoting *Medina v. Choate*, 875 F.3d 1025, 1026 (10th Cir. 2017))). "But the unfolding global pandemic and health crisis . . . are anything but typical." *Hope v. Warden York Cty. Prison*, --- F.3d ----, 2020 WL 1922372, at *2 (3d Cir. Apr. 21, 2020). "These . . . are not ordinary times. . . . [T]he COVID-19 pandemic has given rise to exceptional and exigent circumstances that require the prompt attention of the courts . . . ." *United States v. Roeder*, --- F. App'x. ----, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020).

COVID-19 has forced courts across the country to grapple with elusive legal standards that ask whether "extraordinary and compelling" or "exceptional" circumstances exist. In two recent opinions, the Third Circuit has provided thoughtful and important guidance on how to carry out that task. In *United States v. Raia*, the Third Circuit stated that "the *mere existence* of COVID-19 in society and the possibility that it may spread to a particular prison *alone* cannot independently justify compassionate release" under 18 U.S.C. § 3852(c)(1)(A), which allows for such release if "extraordinary and compelling" circumstances exist. --- F.3d ----, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) (emphasis added). Similarly, in *United States v. Roeder*, the Court stated that "[t]he existence of some health risk to every federal prisoner as a result of this global pandemic does not, *without more*, provide the *sole basis* for granting release to each and every prisoner within our Circuit." --- F. App'x. ----, 2020 WL 1545872, at *3 n.16 (3d Cir. Apr. 1, 2020) (emphasis added).

Applied to this case, the lessons of *Raia* and *Roeder* are clear: the abstract specter of COVID-19 alone is not enough—this Court must engage in a careful and fact-specific assessment of whether "exceptional circumstances" at the FDC justify the exercise of § 2241

jurisdiction over the FDC's pretrial detainees. But both sides must have a chance to present facts to inform the Court's decision on this question.

It is well-established that "[d]istrict courts have the authority to allow discovery in order to determine whether subject-matter jurisdiction exists." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 (3d Cir. 2015). "[P]arties should be granted a fair opportunity to engage in jurisdictional discovery so as to adequately define and submit to the court facts necessary for a thorough consideration" of preliminary issues relating to subject matter jurisdiction. *Federal Ins. Co. v. Richard I. Rubin & Co., Inc.*, 12 F.3d 1270, 1284 n.11 (3d Cir. 1993); *see also Maqaleh v. Hagel*, 738 F.3d 312, 325-26 (D.C. Cir. 2013), *vacated in part on unrelated grounds sub nom. al-Najar v. Carter*, 575 U.S. 908 (2015) (noting—in the context of a § 2241 habeas petitioner's request for jurisdictional discovery—that the "district court has discretion to allow discovery if it could produce [facts] that would affect [its] jurisdictional analysis" alterations in original) (internal quotation marks omitted)); Rules Governing Section 2254 Cases, Rule 6(a) (amended Dec. 1, 2019) ("A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery.").[4] As Respondent himself recognizes, "the Court is not restricted to the face of the pleadings, but may review any

---

[4] Rule 6 applies to § 2241 proceedings. *See* Rules Governing Section 2254 Cases, Rule 1(b) (amended Dec. 1, 2019) ("The district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a) [which covers § 2254]."); *Levi v. Holt*, 192 F. App'x 158, 162 (3d Cir. 2006) ("Rule 6 . . . appl[ies] . . . to 2241 cases." (citing Rule 1(b)); *see also Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir. 1987) ("Under Rule 6(a) . . . the district court has discretion to decide the extent to which discovery is appropriate."); *Maqaleh*, 738 F.3d at 325-26 (D.C. Cir. 2013) (stating the same in support of proposition that district courts have discretion to allow jurisdictional discovery (citations omitted)). Petitioners have shown "good cause" to justify limited jurisdictional discovery for the reasons expressed in the body of this opinion. They have also complied with Rule 6(b)'s procedural requirements. *See* Rule 6(b) (requiring requesting party to provide reasons for discovery request that includes proposed interrogatories, requests for admission, and requests for specific documents); *see also* Pet'rs' Resp. Br., at 28-30 (ECF No. 17) (setting forth reasons why "good cause" exists for discovery); *id.*, Ex. A (ECF No. 17-1) (specific interrogatory requests); *id.*, Ex. B, at 5-7 (ECF No. 17-2) (specific document requests). The Court has not yet ruled on the *specifics* of these discovery requests. In light of this opinion, the parties will have the chance to present a new, tailored jurisdictional discovery plan. Of course, the Court will also review any specific objections, and is holding a telephone conference on Monday, April 27, 2020, at 3:00pm.

evidence to resolve factual disputes concerning the existence of jurisdiction." Resp't. Mot. to Dismiss, at 5 (ECF No. 12-2) (internal quotation marks omitted).[5]

For the pretrial detainees in Petitioners' proposed class, a key jurisdictional question under *Reese* is whether "exceptional circumstances" exist at the FDC that justify the exercise of § 2241 jurisdiction. The parties paint drastically different pictures of the FDC, and depending on which is credited, the case for exercising jurisdiction strengthens or weakens. Respondent says that the FDC currently has no positive COVID-19 cases and that no inmates are exhibiting symptoms; Petitioners say that since the FDC is not testing inmates for COVID-19, there is no way to know if this claim is true.[6] Respondent says that, despite a full lockdown that bars attorneys from entering the FDC, all pretrial detainees have adequate access to counsel and are able to effectively file individual motions for relief under the Bail Reform Act; Petitioners say that detainees cannot access counsel or the court so as to effectively utilize Bail Reform Act motions.[7]

---

[5] Only "factual" challenges, not "facial" challenges, permit consideration of evidence beyond the face of the pleadings on a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial challenge does not dispute the facts in the complaint, whereas a factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or otherwise present[ing] competing facts." *Id.* (alteration in original) (internal quotation marks omitted)). Respondent makes clear that he is raising a factual challenge to the Court's jurisdiction. *See* Resp't. Mot. to Dismiss, at 14 (arguing that no "exceptional circumstances" exist to justify exercising pretrial § 2241 habeas jurisdiction); *id.* at 1-2, 6-13 (providing a detailed factual rebuttal to Petitioner's version of the facts); *id.* at 5 (arguing that the Court may consider facts beyond Petitioner's complaint to resolve Respondent's jurisdictional challenge).

[6] Additionally, although Respondent states that "[n]o in inmate has required testing, and no inmate appears to be exhibiting symptoms," he never states whether the FDC has tests available to it, and if so, how many. Marler Decl., ¶ 4 (ECF No. 12-5).

[7] This consideration may be paramount. Respondent argues that habeas is inappropriate because another avenue of relief exists: individual review under the Bail Reform Act. If COVID-19 is preventing detainees from properly and promptly accessing counsel or the court, that fact would weigh in favor of finding that "extraordinary circumstances" may justify exercising pretrial § 2241 jurisdiction. On the other hand, if Respondent is correct that detainees are adequately able to access counsel and the court under the current circumstances, that would cut the other way.

The FDC is on lockdown and is not allowing lawyers in or out of the facility. Without limited jurisdictional discovery, there is no way for Petitioners to respond to Respondent's factual assertions that no "extraordinary circumstances" exist at the FDC. In our adversarial system, basic considerations of procedural fairness require that both sides "be granted a fair opportunity to engage in jurisdictional discovery so as to adequately define and submit to the court facts necessary for a thorough consideration" of "critical preliminary determination[s]" related to jurisdictional disputes. *Federal Ins. Co.*, 12 F.3d at 1284 n.11. The existence of a public health emergency cannot lead the Court to abandon this principle.

The Court appreciates Respondent's prompt effort to provide information on the FDC's efforts to respond to COVID-19 and recognizes the monumental challenge that the disease has presented to the BOP, as well as the around-the-clock effort that the BOP appears to have engaged in so far throughout this crisis. But the Court cannot rely on one party's word without giving the other party a fair chance to rebut it. That is especially important here, where "[d]ue to continuously changing circumstances surrounding the COVID-19 pandemic, it is unclear to what extent [the BOP's] measures have been or will be effective . . . ." *Roeder*, 2020 WL 1545872, at *2. Just as the FDC deserves a chance to argue that no "extraordinary circumstances" justify pretrial exercise of § 2241 jurisdiction, Petitioners should have the chance to make an opposing argument. Without limited jurisdictional discovery, they cannot do so.

## II.   Conclusion

The Court will allow Petitioners to engage in limited discovery—on an expedited basis—to gain more information relevant to the jurisdictional question of whether "extraordinary circumstances" exist at the FDC. Given the concerns Respondent has raised over allowing an in-

person, on-site inspection, the Court will not order such an inspection.  The Court reserves decision on Respondent's motion to dismiss.

_s/ANITA B. BRODY, J._____<br>
ANITA B. BRODY, J.

Copies **VIA ECF  04/24/2020**